UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL TURNER and
MICHAEL TURNER CONSTRUCTION                                        PLAINTIFFS

v.                                          CIVIL ACTION NO. 3:14cv129-DPJ-FKB

RAY RAYBON, INDIVIDUALLY                                           DEFENDANTS

ORDER

This individual-capacity § 1983 case is before the Court on Defendant's Motion for

Judgment on the Pleadings, or, alternatively, for Summary Judgment [5].  Because Defendant is

entitled to qualified immunity on the federal claims and the state claim is barred by the

Mississippi Tort Claims Act, the motion is granted.

I.      Facts and Procedural History

Plaintiffs Michael Turner and Michael Turner Construction bring this lawsuit against

Mississippi Department of Revenue ("MDOR") Agent Ray Raybon, in his individual capacity,

for alleged constitutional violations committed in Raybon's attempt to collect a state tax debt.

Specifically, Plaintiffs assert that on March 20, 2013, they received a letter from the MDOR

"indicating that MDOR had assessed $65,878.66 against the Plaintiffs."  Compl. [1] ¶ 7.  They

allege that on or about February 12, 2014, Raybon "went to the Plaintiffs' home in an apparent

effort to threaten and intimidate the Plaintiff," *id.* ¶ 11, even though the Turners had notified

MDOR that their attorney had power of attorney in all tax matters, *id.* ¶ 9 & Ex. B.

In his declaration, Raybon fleshes out the facts a bit.  He explains that he went to Turner's

home on three occasions between December 1, 2012, and January 10, 2014, "for the purpose of

discussing collection of a finally established and outstanding state income tax obligation."

Raybon Decl. [5-1] ¶ 4.  On two of Raybon's visits to Turner's home, he knocked on the front door, but when no one answered, he left his business card and departed without speaking to anyone.  *Id.* ¶¶ 7, 9.  On another visit, Raybon encountered Turner's son outside the home. Turner's son advised that Turner was not home, so Raybon "gave the young man [his] business card and asked him to tell Michael Turner to call [him] at the telephone number on [his] card." *Id.* ¶ 8.  Though Plaintiffs' attorney takes issue with this description as "self serving," there is no countervailing record evidence, and there is no dispute that Raybon never actually encountered Turner.

Plaintiffs filed this lawsuit on February 14, 2014, asserting that Raybon violated their rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  Plaintiffs also assert a state-law claim for intentional infliction of emotional distress ("IIED").  Raybon timely answered and filed his motion for judgment on the pleadings or summary judgment.  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Raybon has moved alternatively under Rules 12(c) and 56, and has attached his declaration to his motion.  Plaintiffs neither objected to the Court ruling under Rule 56 nor sought relief under Rule 56(d), so the Court will consider the motion as one for summary judgment under Rule 56.

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations,

speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute

for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*,

276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

A.     Federal Claims

Plaintiffs sued Raybon in his individual capacity seeking damages under 42 U.S.C.

§ 1983. Section 1983 precludes deprivation of a right "secured by the Constitution and laws" of

the United States by a person acting under color of state law. 42 U.S.C. § 1983; *Daniel v.

Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1988). In this case, Plaintiffs assert that Raybon

violated the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Raybon responds by invoking qualified immunity as a defense to these claims. Qualified

immunity is a shield from individual liability for "'government officials performing discretionary

functions . . . as long as their actions could reasonably have been thought consistent with the

rights they are alleged to have violated.'" *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense.  *Hamptom v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).  In the summary-judgment posture, the Court "'looks to the evidence before it (in the light most favorable to the plaintiff.)'"  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies.  "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Second, if a violation has been alleged, the Court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'"  *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).  In this case, Plaintiffs fail to establish any constitutional violation, so they never get past the first step.

### 1.    Fourth Amendment Claim

The Fourth Amendment protects citizens from "unreasonable searches and seizures." U.S. Const. amend. IV.  "[T]he antecedent question" in assessing a Fourth Amendment claim is "whether or not a Fourth Amendment 'search' [or 'seizure'] has occurred."  *Kyllo v. United*

*States*, 533 U.S. 27, 31 (2001).  In this case, Plaintiffs have not alleged that they or their property were either searched or seized within the meaning of the Fourth Amendment.

To begin, there is no allegation that Raybon searched Turner or his property.  "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."  *Kyllo*, 533 U.S. at 33 (citation omitted).  Here, the parties agree that Raybon left the premises when he could not find Turner.  As the United States Supreme Court recently explained, a government official "may approach a home and knock" without conducting a search within the meaning of the Fourth Amendment "precisely because that is 'no more than any private citizen might do.'"  *Florida v. Jardines*, 133 S. Ct. 1409, 1416 (2013) (quoting *Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011)); *see also Gilmer v. Trowbridge*, No. 3:08cv136-TSL-JCS, 2009 WL 649692, at *6 (S.D. Miss. Mar. 10, 2009) (collecting cases and granting officer qualified immunity "with respect to plaintiff's charge that he violated plaintiff's Fourth Amendment right to be free from an unlawful search merely by entering onto plaintiff's property").

Likewise, Raybon never seized anyone.  "A person is 'seized' under the Fourth Amendment 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 431 (5th Cir. 2008) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)).  Raybon never seized Turner, and Plaintiffs do not allege otherwise.  Because there was no search or seizure, much less an unreasonable one, Raybon is entitled to qualified immunity on the Fourth Amendment claim.

2.      Fifth Amendment Claim

The Fifth Amendment protects citizens against self-incrimination, including "during a 'custodial' interrogation." *Murray v. Earle*, 405 F.3d 278, 286 (5th Cir. 2005) (footnote and citations omitted).  But Plaintiffs fail to state a Fifth Amendment claim for at least three critical reasons.  First, Turner never made a statement.  Second, Plaintiffs acknowledge that Turner was never in Raybon's custody—the two never even encountered each other.  Finally, even if Raybon had obtained an involuntary statement in the course of a custodial interrogation, "§ 1983 plaintiffs do not have a Fifth Amendment claim against law-enforcement officials who have elicited unlawful confessions if those confessions are not then introduced against the plaintiffs in criminal proceedings." *Id*. at 285 n.11 (citing *Chavez v. Martinez*, 538 U.S. 760, 766 (2003)).  Because there was no Fifth Amendment violation, Raybon is entitled to qualified immunity on this claim.

3.      Sixth Amendment Claim

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  Again, Turner never saw Raybon, so Turner was never without counsel.  Moreover, the right "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).  There was no Sixth Amendment violation, and Raybon is entitled to qualified immunity on the Sixth Amendment claim.

        4.        Fourteenth Amendment

Plaintiffs' intent in citing the Fourteenth Amendment remains unclear.  It could be that Plaintiffs cite the amendment as the vehicle through which the protections of the Fourth, Fifth, and Sixth Amendments apply to the states.  *See, e.g.*, *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528 (1967) ("[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment.").  Or perhaps they contemplate separate due-process or equal-protection claims.  If the former, then those claims are addressed above.  If the latter, Plaintiffs failed to adequately aver such claims and have likewise failed to support them under Rule 56.  To the extent there is a separate Fourteenth Amendment claim, it is dismissed as abandoned and otherwise meritless.[1]

        B.        Intentional Infliction of Emotional Distress

Finally, Plaintiffs assert an IIED claim against Raybon.  "Where there is no physical injury, a party may recover for intentional infliction of emotional distress, 'where there is something about the defendant's conduct which evokes outrage or revulsion.'"  *Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 290–91 (Miss. 2007) (quoting *Morrison v. Means*, 680 So. 2d 803, 806 (Miss. 1996)).  "The standard is whether the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or reckless.'"  *Id.* (quoting

---

[1]Plaintiffs also complain about the constitutionality of certain Mississippi Tax Code provisions relating to income and sales tax audits and examinations by MDOR, arguing that they *could* result in constitutional violations *if* the taxpayer complies with the MDOR's request for documents.  *See* Pls.' Mem. [8] at 8.  But that argument also fails.  Even assuming that a yet-to-occur act could trigger § 1983 liability, Plaintiffs never link their complaints about these laws to any actions Raybon took in his individual capacity.  If Mississippi passed an unconstitutional statute, Rayborn would not be personally liable for it.  *See generally Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (citing *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001)); *see Ex parte Young*, 209 U.S. 123 (1908).

*Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995) (other citations

omitted)).  If the conduct is indeed malicious, then it would fall beyond the immunity the

Mississippi Torts Claims Act (MTCA) preserves for governmental employees acting within the

course and scope of employment.  Miss. Code Ann. § 11-46-7(2); *see Weible v. Univ. of So.*

*Miss.*, 89 So. 3d 51, 64 (Miss. 2011) ("[T]o the extent intentional infliction of emotional distress

is predicated on malicious conduct, the claim would be outside the scope of the MTCA.").

The conduct in this case is Raybon's three unsuccessful attempts to visit Turner and the

decision to leave a business card.  According to Plaintiffs, this "conduct was nothing short of

Storm Trooper, Gestapo tactics designed to intentionally terrorize, unnerve and cause severe

emotional distress to the Plaintiff and place him in imminent fear of physical harm and/or

wrongful incarceration."  Pls.' Mem. [8] at 2.  The claim fails under the MTCA and would

otherwise fail under Rules 12(c) and 56 of the Federal Rules of Civil Procedure.

Plaintiffs certainly use the magic word in their Complaint, but merely calling Raybon's

conduct "malicious" is not enough.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007))).  And

when the evidence is viewed in light of Rule 56, the "malicious" tag is nothing more than the

conclusory allegation of Plaintiffs' counsel.  *See TIG Ins. Co.*, 276 F.3d at 759 ("Conclusional

allegations . . . do not adequately substitute for specific facts showing a genuine issue for trial.").

As a matter of law, the unsuccessful attempt to visit Turner and the act of leaving a

business card is neither malicious nor capable of invoking "outrage or revulsion.'" *Franklin*

*Collection Serv., Inc.*, 955 So. 2d at 291; *see also Wendell Russell Morris v. Mickey Myers*, Civil Action No. 3:13cv121TSL-JMR (April 21, 2014) (granting summary judgment on IIED claim under nearly identical circumstances). The state-law claim against Raybon is barred by the MTCA. Miss. Code Ann. §§ 11-46-7(2), 11-46-9(1)(i). It likewise fails to state a claim or raise a genuine dispute for trial.[2]

IV.    Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings, or, alternatively, for Summary Judgment [5] is granted and this case is dismissed with prejudice. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 2nd day of June, 2014.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[2]Plaintiffs argue that visiting Turner violated Mississippi Rule of Professional Conduct 4.2, adding to the outrage. But the record is undisputed that Raybon is not an attorney, and it is not clear that Rule 4.2 would preclude the visit even if he was an attorney.